IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:18-CV-149-FL

| | | |
|---|---|---|
| DONNA BAKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings. (DE 24, 26). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge James E. Gates entered memorandum and recommendation ("M&R"), wherein it is recommended that the court deny plaintiff's motion and grant defendant's motion, affirming defendant's decision denying disability benefits. Plaintiff timely filed objection to the M&R, and the issues raised are ripe for ruling. For the reasons that follow, the court denies plaintiff's motion and grants defendant's motion.

## BACKGROUND

On June 23, 2015, plaintiff protectively filed an application for Title II disability insurance benefits and a Title XVI application for supplemental security income. In both applications, plaintiff alleged disability beginning February 1, 2010. The claims were denied initially and upon reconsideration. Plaintiff requested hearing before an administrative law judge ("ALJ"), who held an evidentiary hearing on September 7, 2017. The ALJ administratively adjusted plaintiff's

disability onset date to April 9, 2015,[1] and denied plaintiff's claims by decision entered December 28, 2017. The Appeals Council denied plaintiff's request for review on February 22, 2018. At that time, the decision of the ALJ became defendant's final decision. Plaintiff then filed this action seeking judicial review.

## DISCUSSION

A.    Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review defendant's final decision denying benefits. The court must uphold factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence [is] . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the court is not to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for defendant's. Craig, 76 F.3d at 589.

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). "[T]he ALJ must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'"

---

[1] Plaintiff previously filed applications for Title II and Title XVI benefits on April 18, 2013. Those claims were denied initially and upon reconsideration. On April 8, 2015, the ALJ reviewing plaintiff's first claim issued an unfavorable decision. Therefore, the ALJ reviewing the present claim amended plaintiff's alleged onset date to April 9, 2015, the day after the last ALJ decision.

2

Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)); Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (holding an ALJ's decision must "include a narrative discussion describing how the evidence supports each conclusion").

To assist in its review of defendant's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform [his or her] past relevant

3

work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since April 9, 2015. (Transcript of the Record ("Tr.") 18). At step two, the ALJ found plaintiff had the following severe impairments: asthma, allegic rhinitis, and osteoarthritis and other allied disorders. (Tr. 18). At step three, the ALJ determined these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listings in the regulations. (Tr. 19).

Before proceeding to step four, the ALJ determined plaintiff had the residual functional capacity ("RFC") to perform light work, see 20 C.F.R. §§ 404.1567(b), 416.967(b), with the following restrictions:

> [s]he can lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; and push and pull as much as can lift and carry. She can have occasional exposure to dust, odors, fumes, and pulmonary irritants.

(Tr. 19).

At step four, the ALJ concluded plaintiff is capable of performing past relevant work as a preschool teacher and education manager, since the those positions do not require performance of work related activities precluded by plaintiff's RFC. (Tr. 29). Thus, the ALJ concluded plaintiff was not disabled under the terms of the Social Security Act. (Tr. 30).

B. Analysis

Plaintiff objects to the finding that the ALJ properly evaluated her RFC. Specifically, plaintiff contends that the ALJ failed to properly credit her symptom testimony, and failed to perform a function-by-function analysis.

1. Credibility Assessment

An ALJ must "consider all [] symptoms, including pain, and the extent to which [] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(a).[2] Where an ALJ assesses plaintiff's symptoms, the ALJ must first determine whether the plaintiff medically determinable impairments could reasonably be expected to cause her alleged symptoms. Hines v. Barnhart, 453 F.3d 559, 564 (4th Cir. 2006). After this determination is made, the ALJ must then evaluate the "intensity and persistence of the claimant's [symptoms], and the extent to which it affects her ability to work." See Craig, 76 F.3d at 594–96 (internal citations omitted). The evaluation must account for "all the available evidence, including the claimant's medical history, medical signs, . . . laboratory findings, . . . daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." Id. at 595 (internal citations omitted). "[T]he ALJ must build an accurate and logical bridge from the evidence to his conclusion that [the claimant's] testimony was not credible." Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017) (internal quotations and citations omitted).

Here, the ALJ extensively recounts plaintiff's hearing testimony regarding her symptoms. (See Tr. 20–21, 38–53). Considering this testimony, the ALJ made her step one finding, determining that plaintiff's medically determinable impairments could reasonably be expected to produce the

---

[2] "Symptoms means your own description of your physical or mental impairment." 20 C.F.R. §§ 404.1502(i), 416.902(i).

5

symptoms to which plaintiff testified. (Tr. 21). The ALJ determined at step two that plaintiff's statements concerning the intensity, persistence, and limiting effects were not consistent with medical evidence and other evidence in the record. (Tr. 21). Specifically, the testimony was inconsistent because "[plaintiff's] asthma and allergic rhinitis are moderately controlled with medication. Her osteoarthritis and allied disorders has only been treated with Toradol injections." (Tr. 22). The ALJ reviewed in detail plaintiff's treatment records and consultative psychological examination. (See Tr. 22–27). As quoted in full below, the ALJ provided further explanation of what limitations the medical evidence supports. (See Tr. 27–28). Thus, the ALJ properly explained and supported her credibility determination with respect to plaintiff's symptom testimony.

2. RFC

A RFC is what a person can still do despite her limitations. 20 C.F.R. § 404.1545(a). An ALJ's RFC assessment must "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (quotations omitted). The Fourth Circuit has "rejected a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." Id. However, "remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. (quotations omitted).

The United States Court of Appeals for the Fourth Circuit has published several recent decisions illustrating a failure to conduct a proper functional analysis. In Monroe, the Fourth Circuit remanded to the Commissioner where the ALJ failed to consider plaintiff's "narcolepsy and apnea, and all of his other physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect his ability to work." Monroe, 826 F.3d at 188.

Similarly, the Fourth Circuit recently reversed a decision where the ALJ "drew no explicit conclusions about how [plaintiff's] mental limitations affect her ability to perform job-related tasks for a full workday." Thomas v. Berryhill, 916 F.3d 307, 312 (4th Cir. 2019).

As noted above, the ALJ describes extensively the evidence in the record, including plaintiff's testimony, her medical records, medical opinion evidence, and statements submitted by other individuals. (See Tr. 22–29). The ALJ also included the following narrative discussion addressing plaintiff's functional limitations:

> The undersigned finds the claimant's asthma, allergic rhinitis, and osteoarthritis and other allied disorders are not disabling, either alone or in combination. On August 25, 2015, a chest x-ray showed no acute cardiopulmonary process (Ex. B6F). Spirometry showed moderate obstruction (Ex. B5F). In September 2015, the claimant's lungs had no wheezing, rales, crackles, rhonchi, or stridor. She had good air movement. Her chest expanded symmetrically. Her lungs were clear bilaterally, and she had normal breath sounds. Her heart had a regular rate and rhythm, with no murmurs, rubs, or gallops. Her primary care provider said her allergic asthma was better controlled. She was to continue using her albuterol inhaler or nebulizer as needed. Her allergic rhinitis was under fair control. The claimant reported she was watching a four-year-old boy (Ex. B3F). At the consultative psychological evaluation, the claimant said she did a wide range of activities, including cooking, cleaning, running errands, and shopping. She went to church on Sundays. She said she felt fine most of the time. She did not take anything for pain (Ex. B4F).

> The claimant had asthma flares in November 2015, January 2016, and twice in February 2016 that were treated at the emergency department (Ex. B8F). In September 2016, she had fair control of her moderate persistent asthma. Her allergic rhinitis was controlled (Ex. B21F). The claimant complained of myalgias in October 2016 (Ex. Bl 7F). She complained of right upper extremity pain in February 2017. She had decreased range of motion of the shoulder but no muscle weakness (Ex. B18F, B19F). The claimant reported some shortness of breath while doing yard work in March 2017. Her lungs were clear bilaterally, with normal breath sounds. Her primary care provider said her asthma was better controlled, and her allergic rhinitis was

7

    under fair control (Ex. B21F). The claimant complained of back pain in March 2017; however, she had a normal gait, strength, sensation, and range of motion (Ex. 19F). She indicated she had left arm pain in April and July 2017 (Ex. 20F). The undersigned finds the claimant's asthma and allergic rhinitis are moderately controlled, with occasional flares. She has felt well enough to look after a small child and perform household chores, errands, and yard work. Her myalgias have only been treated with Toradol injections. She reported BC powders helped her pain (Ex. B20F). Due to the claimant's asthma, allergic rhinitis, and osteoarthritis and allied disorders, she would be limited to light work, with an additional environmental restriction due to her asthma.

(Tr. 27–28). The ALJ also considered the medical opinions and other statements in the record, accounting for environmental limitations due to plaintiff's impairments. (See Tr. 28–29).

  Plaintiff, citing her own testimony, argues that the RFC is fundamentally flawed because the ALJ did not account for frequent breaks necessitated by her severe asthma, or the lifting restrictions due to chronic lower back pain. (Obj. (DE 29) at 7). Plaintiff's argument amounts to nothing more than re-weighing the evidence meticulously considered by the ALJ in this matter.[3] The RFC in the instant case is both adequately explained and supported by substantial evidence. (See Tr. 27–29).

## CONCLUSION

  Based on the foregoing, and upon de novo review of the administrative record, the court DENIES plaintiff's motion for judgment on the pleadings, (DE 24), and GRANTS defendant's motion for judgment on the pleadings, (DE 26). The clerk is DIRECTED to close this case.

---

[3]  Insofar as plaintiff also challenges the ALJ's explanation as to why plaintiff is able to perform past relevant work, her argument is without merit. See 20 C.F.R. § 404.1560(b)(2) ("We may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' . . . to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity."); (Tr. 29–30 (explaining plaintiff's past relevant work is within her RFC)).

SO ORDERED this the 6th day of August, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge